IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| VANESSA MAE DECKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:12-CV-158-BL |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

**MEMORANDUM OPINION AND ORDER OF REMAND**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Vanessa Mae Decker (Decker) seeks judicial review of the Commissioner of Social Security's decision, which denied her application for a period of disability and disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. All parties consented to the jurisdiction of the U.S. Magistrate Judge and the United States District Judge ordered the case be reassigned to this court.

After considering all the pleadings, briefs, and administrative record, this court finds that the Commissioner's decision should be vacated in part and this matter remanded for further proceedings.

**Statement of the Case**

Following a hearing on May 4, 2011, an Administrative Law Judge (ALJ) determined on June 20, 2011, that Decker was not disabled from September 30, 2009, her alleged onset date, through the present date. (Tr. 23).

Specifically, the ALJ held that Decker: did not engage in any substantial gainful activity

(SGA) from her alleged onset date; had two severe impairments, bipolar disorder and generalized anxiety; had no impairments meeting or equaling the Appendix 1 listed impairments (20 C.F.R. 404.1520(d), 404.1525, and 404.1526); had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with some nonexertional limitations; and was unable to perform any past relevant work. Further, the ALJ held that considering Decker's age, education, work experience, and RFC, there existed jobs in the national economy that Wilson could have performed. (Tr. 14-23).

The Appeals Council denied review on July 12, 2012. (Tr. 1-3). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## Factual Background

Prior to her alleged disability, Decker held a multitude of jobs, including dental assistant, children's art teacher, car saleswoman, assistant clothing store manager, and artist. (Tr. 32-34). Originally from New York, Decker moved to Louisiana, in part, she alleges, because of bi-polar disorder and manic episodes. (Tr. 35). Following a "breakdown," Decker moved in with her parents in Wichita Falls, Texas. (Tr. 35-36).

Decker claims that anxiety and bi-polar disorder, among other impairments, limit her ability to live and work. For example, she claimed she would go to the store to buy her groceries at three o'clock in the morning to avoid crowds. (Tr. 38). She also claimed that at jobs, she would encounter stressful situations or feel like she could not perform what was expected of her, and would just leave. (Tr. 33-35).

It was in Wichita Falls that Decker began treatment at the Helen Farabee Regional

MHMR Center (MHMR). (Tr. 236-255). Beginning in November of 2009, Decker initially contacted MHMR claiming she was having problems with her medications. (Tr. 253). Over time Decker saw many health professionals at MHMR, including benefits coordinators, registered nurses, licensed vocational nurses, qualified mental health professionals, licensed professional counselors, and doctors. (Tr. 342-96). MHMR provided several services, including prescription refilling, mental/psychological examinations, and group therapy experiences. (Tr. 342-96).

In February of 2010, psychologist Michael Vandehey, Ph.D., performed a consultative examination, ultimately diagnosing Decker with bipolar disorder and generalized anxiety disorder, among other diagnoses. (Tr. 256-59). In March of 2010, psychologist Jim Cox, Ph.D., completed a psychiatric review technique and mental RFC assessment of Decker. (Tr. 274-77). Dr. Cox diagnosed Decker with bipolar disorder and opined that Decker could "understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work setting." (Tr. 263, 276). Dr. Cox further opined that Decker's "alleged limitations from symptoms [were] not fully supported by the objective [evidence of record]." (Tr. 276). In July of 2010, psychologist Charles Lankford, Ph.D., performed a case analysis, affirming the aforementioned psychiatric review technique and mental RFC. (Tr. 301-02).

## Standard of Review

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit."

*Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*,

402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id*. (quoting *Newton*, 209 F.3d at 452.).

## Discussion

Decker raises two issues. First, she argues the ALJ failed to give the treating physician's opinion greater weight than the CE or state agency opinion. (Pl.'s Br. 4). Second, Decker argues the ALJ erred in making no findings regarding the plaintiff's ability to maintain employment. (Pl.'s Br. 6).

### I.   The ALJ Gave Proper Weight to Treating Sources

Decker claims the ALJ erred by not giving a treating physician's opinion greater weight than examining and non-examining sources' opinions. (Pl.'s Br. 5).

The treating physician rule is referenced throughout Social Security regulatory and case law; it essentially provides that if a treating source's opinion on the nature and severity of a claimant's impairments is consistent with the record and based on sound diagnostic techniques, it will be afforded controlling weight. *See, e.g.*, 20 C.F.R. § 404.1527(c)(2); *Giles v. Astrue*, 433 F.App'x 241, 246-47 (5th Cir. 2011), *Perez*, 415 F.3d at 465-66 (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) and *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). When a treating source's opinion is not given controlling weight, the ALJ must apply a set of factors to determine what weight will be given to that opinion.  20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 404.1527(c)(3)-(c)(6); *Newton*, 209 F.3d at 448. In any case, the ALJ must give good reasons for the weight he gave a treating source's opinion. 20 C.F.R. § 404.1527(c)(2).

Here, Decker specifically claims the ALJ disregarded Exhibit 12F. (Pl.'s Br. 5-6). Exhibit 12F is a collection of records from MHMR covering the period from July 6, 2010 to April 11, 2011. (Tr. 341-96). As noted above, Decker initially contacted MHMR saying she was having problems with her medications, but over the months Decker saw many health professionals, and received many types of treatment, at MHMR. (Tr. 342-96). A common theme appears in Decker's nine month relationship with MHMR, which the ALJ effectively encapsulated when he wrote, "[s]ubsequent follow-up visit notes reflect that the claimant continued to occasionally report symptoms caused by her mental impairments, but the evidence show her symptoms were effectively controlled with medication." (Tr. 20, 342-83).

Far from failing to consider Exhibit 12F, the ALJ specifically addressed it. (Tr. 20); *see* 20 C.F.R. § 404.1527(c)(2); *Giles*, 433 F.App'x at 246-47. The medical opinions from MHMR support the ALJ's RFC determination that Decker's impairments could reasonably be expected to cause her alleged symptoms, but that the objective medical evidence, including MHMR evidence, did not always harmonize with Decker's allegations of the intensity, persistence, and limiting effects of those symptoms. (Tr. 18-21).[1] The ALJ discussed the consultative examination performed by Dr. Vandehey and the mental RFC assessment performed by Dr. Cox, both of whose conclusions support the ALJ's RFC determination. (Tr. 18-21). In sum, the ALJ afforded proper weight to treating sources, including MHMR.

## II. The ALJ Erred By Not Making A Finding As To Decker's Ability To Maintain Employment

Next, Decker argues that the ALJ erred by making no findings regarding Decker's ability

---

[1] Decker occasionally misconstrues symptoms with diagnoses. (*See* Pl.'s Br. 5). The diagnoses and treatment opinions of MHMR professionals can be summed up as the ALJ did, that while Decker reported symptoms, the evidence shows the treatment, including psychotherapy, counseling, and medication, effectively controlled those symptoms. (Tr. 341-96).

to maintain employment. (Pl.'s Br. 6). Decker claims that as the issue of maintaining employment was raised at the administrative hearing, and because the record shows that Decker could not maintain employment, the ALJ's failure to make a finding on employment maintenance was error. (Pl.'s Br. 6-8).

RFC is the most an individual can still do despite her impairments. 20 C.F.R. §§ 404.1545, 404.1520; SSR 96-8p, 1996 WL 374184 (July 2, 1996). Ruling 96-8p makes clear that RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities *on a regular and continuing basis*. SSR 96-8p, 1996 WL 374184 (July 2, 1996). Usually, the determination whether a claimant can maintain employment is subsumed in the analysis regarding the claimant's ability to obtain employment. *See Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003); 20 C.F.R. § 404.1545; SSR 96-8p. However, when a claimant's impairment is nonexertional, the ALJ must determine whether the claimant's symptoms preclude her from maintaining employment. *Frank*, 326 F.3d at 618; *Watson*, 288 F.3d at 217; *see Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Indeed, the *Singletary* court held that in such circumstances, "[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Singletary*, 798 F.2d at 822 (emphasis in original); *see Watson*, 288 F.3d at 217.

Decker asserts solely nonexertional impairments. She alleges that while getting a job was not a problem (at the administrative hearing Decker testified that she had thirty-nine jobs over the past fifteen years), her work history shows an inability to remain at a job for any real length of time, due to her noted impairments. (Pl.'s Br. 6). The ALJ acknowledged Decker's claims of

an inability to maintain a job; he asked her about it during the administrative hearing. (Tr. 19 ("The claimant alleged during the hearing that she is unable to sustain employment due to the symptoms and limitations caused by her mental impairments."), 33-50). The ALJ analyzed Decker's subjective complaints in terms of severity, contrasting them to various medical reports thereof, ultimately finding Decker's complaints not entirely supported by the medical evidence of record. (Tr. 19). The ALJ ultimately found Decker unable to perform any of her past relevant work. (Tr. 21). However, the ALJ, based on questions to the VE at the administrative hearing, found there to be other jobs in the national economy that Decker could perform, notwithstanding her RFC, age, education, and work experience. (Tr. 22). In deciding that Decker could perform these other jobs, the ALJ considered the skill level required, lowering it from Decker's past job levels of "skilled" and "semi-skilled" to "unskilled" in his hypothetical questioning. (Tr. 46). The ALJ, however, did not adjust his hypotheticals, nor include a finding in his opinion, as to the ability of someone with Decker's constitution to maintain such unskilled jobs.

A demonstrated inability to remain on a job might affect even an unskilled job. (Tr. 47-48). Indeed, Decker's attorney asked the VE about such at the administrative hearing. Decker's attorney asked whether, even given an unskilled job, an individual who had to leave work at unscheduled times twice a month would be able to maintain employment. (Tr. 48). The VE testified that such an individual might be able to maintain the job through one such episode but maybe not even through one. (Tr. 48).

Substantial evidence existed on the record to support Decker's claim that she could not hold a job. She testified that Social Security records showed she had held thirty-nine jobs in fifteen years, just under three jobs per year. Additionally, doctors on the record indicated that she suffered from various mental disorders, including bi-polar disorder and anxiety disorder. (*See,*

*e.g.*, Tr. 256-59, 383). An examining psychologist Michael Vandehey, Ph.D., noted that Decker's prognosis was "poor to fair." (Tr. 259). Dr. Vandehey further stated, "It depends on [Decker's] ability to manage her medications, expand her social/emotional support, maintain employment, and gain insight into her emotional functioning." (Tr. 259). The record includes years of routine and continuing psycho- and behavioral-therapy visits that met Decker's symptoms with varying degrees of success, but which all indicate Decker's continuing need for medication and support. At minimum, the record calls into question Decker's ability to keep a job. No opinion of record affirmatively indicates that Decker does have the ability to maintain employment. When the ALJ did not make a finding regarding this ability, he strayed from *Singletary* and its progeny, and thereby erred. *Singletary*, 798 F.2d at 818; *see Watson*, 288 F.3d at 212.

## Conclusion

Accordingly, the decision of the Commissioner is VACATED in part and the case is REMANDED for further consideration in light of the foregoing. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

SO ORDERED.

Dated: September 11, 2014.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**